UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-20814-CIV-GOLD/McALILEY

GREAT LAKES REINSURANCE
(UK) PLC,

      Plaintiff,

v.

ROMILIO MORALES,
JORGE BARREIRO, and
KEYBANK N.A.,

      Defendants.

_____/

## OMNIBUS ORDER GRANTING
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF No. 57];
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF No. 66]

THIS CAUSE is before the Court upon Plaintiff Great Lakes Reinsurance (UK)

PLC's ("Plaintiff") Motion for Summary Judgment **[ECF No. 57]** and Cross-

Plaintiff/Defendant KeyBank N.A.'s ("KeyBank") Motion for Summary Judgment **[ECF**

**No. 66]**.

In Plaintiff's Motion for Summary Judgment, Plaintiff requests that I determine

that a marine insurance policy issued by Plaintiff is void and affords no coverage for the

alleged theft of a vessel on or about October 30, 2008. Plaintiff seeks summary

judgment against *pro se* Defendants Romilio Morales and Jorge Barreiro on the basis

that: (1) Defendant Morales misrepresented his experience in the ownership and

operation of vessels; and (2) the alleged theft occurred while the insured vessel was

situated on a trailer in the driveway of Defendant Barreiro's residence, falling within an

exclusion for such losses set forth in the policy. Plaintiff seeks summary judgment

1

against Defendant KeyBank on the basis that KeyBank is a simple loss payee, with no greater right under the policy than Defendants Morales and Barreiro.

KeyBank moves for summary judgment on its claim for breach of note and deficiency judgment. KeyBank argues that Defendant Morales breached the Consumer Note Installment Loan Note, Security Agreement, and Disclosure Statement he executed on June 23, 2005 by failing to pay KeyBank monthly installments as specified therein. According to KeyBank, this rendered Defendant Morales in default of his obligations under the Note and caused KeyBank damages.

For the reasons discussed below, I GRANT Plaintiff's Motion for Summary Judgment and GRANT Defendant KeyBank's Motion for Summary Judgment.

## I. Procedural history

On March 31, 2009, Plaintiff filed a complaint for declaratory judgment, seeking a declaration that the policy is void and affords no coverage. **[ECF No. 1]**. Plaintiff asserts eight causes of action against Defendants Morales and Barreiro, alleging that Defendants' misrepresentations and/or failures to disclose material facts allow Plaintiff to rescind the policy. *Id.* at ¶¶ 1-101. The Complaint asserts one cause of action against KeyBank, alleging that KeyBank is a simple loss payee under the marine insurance policy which was obtained via applications bearing Defendant Morales' signature. *Id.* at ¶¶ 102-108. Plaintiff claims that as a simple loss payee, KeyBank is precluded from any recovery by virtue of the facts and law establishing Plaintiff's right of rescission. *See* **[ECF No. 59]**.

On June 1, 2009, Defendants Morales and Barreiro answered the Complaint and filed a Third-Party Complaint against their marine insurance broker, Raquel Salazar and

Elite Insurance Group (collectively "Third-Party Defendants"). **[ECF No. 5]**. The Third-Party Complaint alleged claims for negligent misrepresentation, negligent procurement of insurance, vicarious liability, and breach of contract. *Id.* at pp. 5-10. I granted Third-Party Defendants' Motion to Dismiss, dismissing the Third-Party Complaint without prejudice to file an Amended Complaint within 10 days of denial of coverage, or the complaint will be dismissed with prejudice. **[ECF No. 31, p. 11]**. In doing so, I noted that "there is no possible way to sufficiently allege damages in this case until the underlying declaratory action is resolved with an adverse outcome to the Third-Party Plaintiffs." *Id.* at p. 10.

On June 30, 2009, KeyBank answered Plaintiff's Complaint and filed a cross-claim against Defendant Morales. **[ECF No. 10]**. KeyBank's cross-claim consists of one count of Breach of Note and Deficiency Judgment, alleging that KeyBank is entitled to a judgment against Defendant Morales in the amount of $56,258.60. *Id.* at p. 14.

## II.     Factual background

In the Southern District of Florida, a party moving for summary judgment must submit a statement of undisputed facts. *See* S.D. Fla. L.R. 7.5. If necessary, the non-moving party may file a concise statement of the material facts as to which it is contended there exists a genuine issue to be tried. *Id.* Each disputed and undisputed fact must be supported by specific evidence in the record, such as depositions, answers to interrogatories, admissions, and affidavits on file with the Court. *Id.* All facts set forth in the movant's statement which are supported by evidence in the record are deemed admitted unless controverted by the non-moving party. *Id.* Pursuant to Fed. R. Civ. P. 56(e)(2), "an opposing party may not rely merely on allegations or denials in its own

pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." *See also Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("conclusory allegations without specific supporting facts have no probative value.").

In support of their respective Motions for Summary Judgment, Plaintiff filed a Statement of Material Facts Not in Dispute **[ECF No. 58]** and KeyBank filed a Statement of Material Facts in Support of Motion for Summary Judgment **[ECF No. 67]** (collectively "Statements"). The time for Defendants to respond has expired, and Defendants failed to oppose or respond to both Motions for Summary Judgment and Statements of Material Facts.[1] Therefore, under Local Rule 7.5(d), all material facts relevant to the claims against Defendants set forth in the Motions are deemed admitted, provided that the movant's statement is supported by evidence in the record. Since Defendants did not respond to the Motions for Summary Judgment, the following facts from both Statements, supported by the affidavits, exhibits, depositions, answers, and reasonably inferred therefrom, are undisputed.

## A.    Parties

Plaintiff is a marine insurance company which issued a policy affording Hull & Machinery coverage on a 2005 33-foot Avanti power vessel (the "vessel") allegedly

---

[1] At least one other court in this District has granted a Motion for Summary Judgment brought by Great Lakes where the *pro se* defendant failed to respond to the Motion. *See* Case No. 07-cv-60585-JIC **[ECF No. 24]** (Jan. 18, 2008) (granting summary judgment in declaratory judgment action and determining that theft of defendant's vessel is not covered by Great Lakes' marine insurance policy because of a clear and unambiguous exclusion).

4

owned by Defendant Morales. **[ECF No. 58 ¶ 1]**. The vessel was insured for an agreed value of $118,000.00. *Id.* (citing Policy Schedule for Policy No. 200/658/109216).

An alleged theft of the vessel occurred on or about October 30, 2008.[2] **[ECF No. 58 ¶ 2]**. Subsequently, Defendant Morales filed a claim with Plaintiff contending that the insured vessel had been stolen and as a result, was deemed a total loss. *Id.* Defendant Morales made demand for payment of an amount equal to the insured value of the vessel. *Id.* Defendant KeyBank also made a demand for payment. *Id.* at ¶ 3.

T.L. Dallas (Special Risks) Ltd. ("TLD") was Plaintiff's authorized underwriting and claims handling agent for issuing the policy that covered the vessel. **[ECF No. 58 ¶ 5]**. TLD's role was to receive and evaluate applications for marine insurance policies. *Id.* TLD would then either issue a quote to a surplus lines broker[3] on the basis of information contained in the application and any supporting materials, or refuse to issue a quote and thereby reject an application for marine insurance coverage. *Id.* (citing Affidavit of Beric Anthoney Usher ("Usher Aff.") ¶ 7).

## B.    Determination of coverage

Coverage for the vessel was provided based upon certain materials, including a completed and signed application form, which were submitted for review and an

---

[2] While Plaintiff's Separate Statement of Material Facts Not in Dispute indicates that the theft occurred "on or about <u>June 20, 2008</u>," **[ECF No. 58 ¶ 2]** (emphasis added), Plaintiff indicates that "Defendant Jorge Barreiro had been operating the vessel on October 29, 2008, just the day before it was alleged to have been stolen" (*Id.* at ¶ 29 (citing Barreiro Depo., p. 37)). The Complaint alleges that the alleged theft occurred "on or about October 30, 2008." **[ECF No. 1 ¶ 26]**.

[3] Surplus lines insurance brokers submit applications and requests for quotations on prospective marine insurance policies. *Id.* at ¶ 7. The applications would sometimes be completed with the broker's assistance, and then e-mailed or faxed by the broker to the facility in the United Kingdom for review and the underwriting decision. *Id.*

underwriting decision by Defendant Morales' surplus lines insurance broker, Quaker Special Risk ("Quaker").[4] **[ECF No. 58 ¶ 8]**. TLD decided to issue Policy No. 200/658/109216, affording coverage on the vessel for the period from June 29, 2008 through June 29, 2009 on the basis of information disclosed in these application materials. *Id.* (citing Usher Aff. ¶ 11).

In this particular matter, Quaker procured the applications for Policy Nos. 200/658/96742 and 200/658/109216 and submitted them to TLD. **[ECF No. 58 ¶ 17]**. The only thing Quaker was authorized to do in the instant matter was to forward a request for quotation to TLD, followed by submitting a fully completed application form and other supporting material. *Id.* Quaker provided these documents to TLD. *Id.* Review of the material information contained in these documents resulted in the subsequent issuance of Policy No. 200/658/109216. *Id.* (citing Usher Aff. ¶ 17).

Brokers representing Defendant Morales submitted three completed and signed applications and one completed and signed Renewal Application bearing Defendant Morales' signature. **[ECF No. 58 ¶ 20]**. Based on information in these applications, the decision was made to issue to Policy No. 200/658/109216, as well as each of the three policies covering prior years. *Id.* (citing Usher Aff. ¶ 18).

Plaintiff's marine insurance policy states, in pertinent part:

9.    General Conditions & Warranties

\*    \*    \*

---

[4] Quaker, a duly licensed surplus lines broker doing business in New Jersey, specialized in obtaining marine insurance coverage for other brokers who worked on behalf of individual clients but who for one reason or another were unable to approach TLD directly or by themselves. *Id.* at ¶ 17. Quaker did not act as an agent for Plaintiff or TLD. *Id.* at ¶ 15. No surplus lines broker, including Quaker, has ever been authorized to bind Plaintiff, TLD, marine insurance companies, or underwriters in any manner. *Id.* at ¶¶ 15, 16.

h) If you have used a Broker to effect coverage, it is hereby agreed that **your brokers or any substituted brokers (whether surplus lines approved or otherwise), shall be deemed to be exclusively the agents of you** and not of us in any and all matters relating to, connected with, or affecting this insurance. Any notice given or mailed by or on behalf of us to the said brokers in connection with or affecting this insurance, or its cancellation, shall be deemed to have been delivered to you.

\*    \*    \*

n) This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstance material to our acceptance or continuance of this insurance.[5]

*Id.* at ¶ 30 (emphasis added); *see also* **[ECF No. 1, pp. 48-49]**.

## C.    KeyBank as loss payee

All the applications relating to the vessel list and seek coverage for KeyBank as a

simple loss payee. **[ECF No. 58 ¶ 21]** (citing Usher Aff. ¶ 19). As a simple loss payee

under the policy, KeyBank would receive policy proceeds in the event there is coverage

for a loss. *Id.* at ¶ 26 (citing Usher Aff. ¶ 23). The applications state:

LOSS PAYEE – NAME & ADDRESS

KEYBANK N.A.
4910 Tiedeman Rd.
Brooklyn, OH 44144

*Id.* at Exs. C & D. The Policy Schedule for Policy No. 200/658/109216 indicates

the following:

Loss Payee:  KeyBank NA, 4910 Tiedeman Road, Brooklyn, OH 44144

*Id.* at ¶¶ 24, 25 (Ex. E). TLD never received a request by Quaker, or any other

broker or source, to add or include any entity or organization on this policy as anything

---

[5] Although Section (m), and not Section (n), of the Insuring Agreement attached as Exhibit D to Plaintiff's Complaint addresses material misrepresentations, this language appears verbatim in both sections. *See* **[ECF No. 1, p. 49]**.

other than a simple loss payee. *Id.* at ¶¶ 22, 23 (citing Usher Aff. ¶ 20). Similarly, TLD never received any communication or request seeking to amend KeyBank's status from that of a simple loss payee. *Id.* at ¶ 23 (citing Usher Aff. ¶ 21).

## D. Defendant's misrepresentations

The application for Policy No. 200/658/96742 (which afforded coverage on the vessel for the period between June 29, 2007 and June 29, 2008) represents that Defendant Morales was the owner of the boat and had "12+ yrs" experience in both the ownership and operation of boats. **[ECF No. 58 ¶ 27-1]**.[6]   During deposition,[7] Defendant Morales testified that he has never owned a vessel. *Id.* (citing Deposition of Defendant Romilio Morales ("Morales Depo."), pp. 21-25). Defendant Morales also testified that the information about having experience and owning boats for "12-plus years" is incorrect. *Id.*

The application for Policy No. 200/658/109216 represented that Defendant Morales possessed thirteen "plus" years of experience in the ownership of boats, and thirteen "plus" years of experience in the operation of boats. *Id.* at ¶ 27-3. Defendant Morales testified during deposition that this information was also incorrect. *Id.* (citing Morales Depo., pp. 26-28).

Representations concerning the relevant experience of the proposed assured, of the person represented as the individual that owns and will be an operator of the vessel, are material and critical to the underwriting decision. *Id.* at ¶ 28 (citing Usher Aff. ¶ 26).

---

[6] Plaintiff's Statement of Material Facts Not in Dispute in Support of Motion for Summary Judgment contains three consecutive paragraphs which are all numbered as "27." **[ECF No. 58, pp. 9-10]**. To minimize confusion, the citations to these paragraphs in this Order are numbered as 27-1, 27-2, and 27-3.

[7] Defendants Morales and Barreiros were not represented by counsel at their depositions, proceeding *pro se* after their original counsel withdrew. *See* **[ECF No. 36]**.

These false representations with regard to prior ownership and operating experience caused the TLD underwriter to agree to issue Policy No. 200/658/109216. *Id.*

### E.     Theft of vessel

On October 29, 2008, Defendant Barreiro operated the vessel, put the vessel on its trailer, parked the trailer in the driveway of his residence, and went to work the next morning. *Id.* at ¶ 29 (citing Deposition of Defendant Jorge Barreiro ("Barreiro Depo."), pp. 37, 42-43).  Defendant Barreiro's residence has no fence and no gate. *Id.* (citing Barreiro Depo., p. 45).  On the afternoon of October 30, 2008, Defendant Barreiro's wife telephoned him, informing him that the vessel was not parked in the driveway and had apparently been stolen while on its trailer where Defendant Barreiro left it. *Id.* (citing Barreiro Depo., p. 45).  Plaintiff's policy of marine insurance states, in pertinent part:

### EXCLUSIONS TO COVERAGE A

Unless specifically agreed by us in writing and additional premium charged the following losses and or damages (whether incurred directly or indirectly) are not covered by this insuring agreement.

\*        \*        \*

k) Theft of the scheduled vessel and or its equipment whilst on a trailer/boatlift/hoist dry storage rack unless the scheduled vessel is situate in a locked and fenced enclosure or marina and there is visible evidence of forcible entry and or removal made by tools, explosives, electricity or chemicals.

*Id.* at 30; s*ee also* **[ECF No. 1, p. 43]**.

### F.     Defendant Morales' execution of the Note

In consideration for a loan in the principal amount of $61,955.78, Defendant Morales executed a Consumer Note Installment Loan Note, Security Agreement, and Disclosure Statement (the "Note") in favor of KeyBank on June 23, 2005. **[ECF No. 67 ¶ 1]**.  The Note was secured by a security interest in various items of property

9

(collectively the "Collateral"), including the vessel. *Id.* at ¶ 2. KeyBank secured its interest in the Collateral by filing a UCC Financing Statement with the Florida Secured Transaction Registry on July 11, 2005. *Id.* at ¶ 3. The Note specifically provides as follows:

> Default You will be in default if any of the following occurs:
>
> 1. You fail to pay an installment payment within ten (10) days of its due date or any other payment when due.
> 2. You submit any false or misleading information to us for the purpose of obtaining this Loan.
> 3. You breach any significant term or condition of this Agreement.
>
> \*     \*     \*
>
> If you are in default, you agree that:
>
> 1. The entire unpaid balance of this Loan, including unpaid principal, accrued interest and other charges is immediately due without advance notice (unless prior notice is required by applicable law).

*Id.* at ¶ 4. Defendant Morales failed to make any of the required payments due on or after December 1, 2008. *Id.* at ¶ 5. As of June 30, 2009, Morales owed KeyBank $56,258.60, plus accruing interest, late fees, and other permissible charges and costs. *Id.* at ¶ 6.

## III. Jurisdiction

A federal court must always determine whether it has jurisdiction to hear a case. *See, e.g., Arbaugh v. Y & H Corp.*, 546 U.S. 500, 507 (2006) ("The objection that a federal court lacks subject matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."); *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) ("Indeed, it is well-settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking."). As such, even when there is no

dispute between the parties with respect to jurisdiction, federal courts have an independent duty to ensure that subject-matter jurisdiction exists. In the instant case, I exercise jurisdiction pursuant to 28 U.S.C. § 1333 because this is an admiralty and maritime cause within the meaning of Federal Rule of Civil Procedure 9(h). *See* **[ECF No. 1 ¶ 2]**. I exercise supplemental jurisdiction over the cross-claim pursuant to 28 U.S.C. § 1367 because original jurisdiction is properly predicated upon 28 U.S.C. § 2201 and 28 U.S.C. § 1332, and the cross-claim is so related to the claims within the original jurisdiction that it forms part of the same case or controversy under Article III of the Constitution. *See* **[ECF No. 10, pp. 12-13]**.

## IV.  Applicable law

On a motion for summary judgment, the moving party has the burden of showing the absence of a genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *Hilburn v. Murata Elec. North Am. Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). In considering whether the movant has met its burden, the court views the evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party "must go beyond the pleading through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is genuine issue for trial." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

In considering an unopposed motion for summary judgment, the court "cannot base the entry of summary judgment on the mere fact that the motion was unopposed,

but, rather, must consider the merits of the motion." *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). "The district court need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials. At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment." *Id.* at 1101-02 (citations omitted). Even in an unopposed motion, the moving party still bears the burden of identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Here, Defendants have submitted no evidence to overcome their burden of establishing the existence of a genuine issue of material fact. Furthermore, pursuant to the law in the Eleventh Circuit, I have independently reviewed the evidence supported in support of the Motions for Summary Judgment, as well as the entirety of what appear to be the only two depositions taken in this case of Defendants Morales and Barreiro to verify that the Motions are supported by evidentiary materials. *See 5800 SW 74th Ave., Miami, Florida*, 363 F.3d at 1101.

**V.  Analysis**

**A.  Plaintiff's Motion for Summary Judgment against Defendant Morales**

In the Eleventh Circuit, "[i]t is well-settled that the maritime doctrine of *uberrimae fidei* is the controlling law of this circuit." *HIH Marine Servs. v. Fraser*, 211 F.3d 1359, 1362 (11th Cir. 2000). The doctrine "requires that an insured fully and voluntarily

12

disclose to the insurer all facts material to a calculation of the insurance risk." *Id.* Thus, the applicant seeking maritime insurance must "voluntarily and accurately disclose to the insurance company all facts which might have bearing on the insurer's decision to accept or reject the risk." *Certain Underwriters at Lloyd's, London v. Giroire,* 27 F. Supp. 2d 1306, 1311 (S.D. Fla. 1998).

Under *ubberrimae fidei,* "a material misrepresentation on an application for marine insurance is grounds for voiding the policy," even if the misrepresentation is a result of "'mistake, accident, or forgetfulness.'" *Giroire,* 27 F. Supp. 2d at 1363 (citing *Steelmet v. Caribe Towing Corp.,* 747 F.2d 689, 695 (11th Cir. 1984)); *see also Gulfstream Cargo. Ltd. v. Reliance Ins. Co.,* 409 F.2d 974, 980 (5th Cir. 1969)[8] ("Nothing is better established in the law of marine insurance than that a mistake or commission material to a marine risk, whether it be willful or accidental, or result from mistake, negligence or voluntary ignorance, avoids the policy").

### 1. Misrepresentation

Plaintiff argues it is entitled to rescind the insurance policy on the ground that it was void because the application contained material misrepresentations of Defendant Morales' experience, or lack thereof, in operating and owning vessels. In a case very factually similar to the instant matter, another court in this District granted summary judgment in favor of Great Lakes, finding material misrepresentations of the insured's boating and boat ownership experience. *Great Lakes Reinsurance PLC v. Arbos,* 2008 U.S. Dist. LEXIS 109472, 16-17 (S.D. Fla. 2008). In *Arbos,* one defendant was the legal title holder while her friend, the other defendant, paid for the vessel in question.

---

[8] All cases decided by the United States Court of Appeals for the Fifth Circuit before September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981).

*Id.* at *3. The form used to prepare the insurance quote indicated that the legal title holder defendant had ten years of boating experience, five to six years of boat ownership experience, and no losses within the past ten years. *Id.* at *4. Like the instant case, the broker in *Arbos* sent the form to TLD, which decided the terms of the insurance quote based on the information on the form. *Id.* at *5. The legal title holder defendant denied ever seeing, signing, or providing information for the form. *Id.* at fn. 4.

After the vessel in *Arbos* was allegedly stolen, the defendants made a claim for the full insured value of the vessel and Great Lakes sought a declaratory judgment that the policy was void and afforded no coverage for the loss. *Arbos*, 2008 U.S. Dist. LEXIS 109472 at *9. Great Lakes moved for summary judgment on the same grounds as it does in this case, namely that the material misrepresentations and/or the defendants' failures to disclose material facts in the insurance form used to procure the policy breached the duty of utmost good faith and allowed the insurer to void the policy. *Id.* at *9-10. The court in *Arbos* found that the form's representation that the non-authorized operator had no prior marine loss and that the defendant had no boating experience were "certainly misrepresentations and/or non-disclosures." *Id.* at *15.

Here, the applications for coverage specifically inquired how many years of boat ownership and experience both Defendants Morales and Barreira had. **[ECF No. 58-1, p. 3]**. It is undisputed that the applications indicate that Defendants had "10+ yrs" **[ECF Nos. 58-1, p. 3; 58-3, p. 3]**, "12+ yrs" **[ECF No. 58-3, p. 3]**, "previously owned a 27' HydraSport" (*Id.*), and had "13+" years of boat ownership and boating experience **[ECF No. 58-4, p. 3]**. More importantly, these representations are consistent with Defendants' deposition testimony. During deposition, both Defendants Barreiro and

14

Morales repeatedly acknowledged that Defendant Morales never owned a boat, had no

boating experience, and the information on the application forms was incorrect.

> Q:    Mr. Morales, have you ever owned a boat of any kind
>        before the one that is the subject of this litigation?
> A:    No.
> Q:    And would you please be good enough to describe for
>        me all of your experience in the operation of any kind
>        of boat in your words.
> A:    None. No operation at all. I don't have any.
> Q:    Never owned a boat, never operated a boat?
> A:    No.

**[ECF No. 68-1]** (Morales Depo. 12:23-13:8).

Defendant Barreiro recognized that all three documents indicate that he has prior

experience owning a boat. **[ECF No. 62]** (Barreiro Depo. at 32:15-33:2). However,

Defendant Barreiro expressly stated on at least nine occasions during his deposition

that he has never owned a boat. *See, e.g., id.* at 13:17; 27:1-2; 27:23; 28:25-29:1;

31:7-8; 33:6-7; and 34:5.

> Q:    . . . Isn't it true that as of June 29, '05, you had no
>        prior years of boat ownership?
> . . .
> A:    Yes, it is not true, I haven't been an owner.
> . . .
> Q:    So the information on the application is wrong?
> A:    Of course it is, it is wrong.

*Id.* at 29:2-4. Defendant Barreiro acknowledged that information on all three

applications is wrong. *Id.* at 33:8-10.

The general rule in the context of marine insurance is that a broker acts as an

agent for the insured. *Giroire*, 27 F. Supp. 2d at 1313 (citing *Dreiling v. Maciuszek*, 780

F. Supp. 535, 540 (N.D. Ill. 1991); *Washington Int'l Ins. Co. v. Mellone*, 773 F. Supp.

189 (C.D. Cal. 1990)). "The insurer is not to blame if the broker erroneously prepares

the application, because the insurer issues the policy based on the application. The insurer is entitled to rely on the representations of the insured's agent." *Id.* (citing Dreiling, 780 F. Supp. at 541).

Although Defendants testified at deposition that some information on the applications may have been provided by their insurance broker, this is insufficient to overcome the fact that the misrepresentations were made on the applications by the broker, acting as an agent for the insured. This is also in accordance with Defendants' Third Party Complaint in which they allege a contractual relationship with their marine insurance broker, Raquel Salazar and Elite Insurance Group. **[ECF No. 5, p. 10]**. Whether it was the insured or his agent that provided information, it is undisputed that the applications contain misrepresentations.

Defendants' unequivocal and repeated statements acknowledge Defendant Morales' lack of prior boat ownership and experience and Defendant Barreiro's lack of prior boat ownership, in addition to recognizing that the information was false. This supports Great Lakes' position that there were misrepresentations within the applications used to procure the marine insurance policy for the vessel. Regardless of how Defendants testified during deposition in order to characterize the ownership arrangement and the information provided on the application forms, the evidence demonstrates that according to the forms, Defendant Morales was responsible for payments, Defendant Morales was the vessel owner, and Defendant Barreiro was an operator. Whatever arrangements the individual Defendants made between themselves for the credit and ownership of the vessel is not reflected in the applications or the Note. There is no dispute that the applications indicate that both Defendants Barreiro and

16

Morales had prior boat ownership and experience when in fact, this information was plainly incorrect. Therefore, I find that there is no genuine issue of fact with respect to the applications for the marine insurance containing misrepresentations of Defendants' prior boat ownership and boating experience.

## 2. Materiality of misrepresentation

The next inquiry is whether the misrepresentation was material such that it provides grounds for voiding the policy. A misrepresentation is material if "it might have a bearing on the risk to be assumed by the insurer." *HIH Marine Servs.*, 211 F.3d at 1363; *see also Kilpatrick Marine Piling v. Fireman's Fund Ins. Co.*, 795 F.2d 940, 942-43 (11th Cir. 1986) (materiality is "that which could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk"). "Where, as in the instant case, the application form directly and explicitly inquires into a particular subject, that being the purchase price, a presumption arises as to the materiality of that particular question." *Great Lakes Reinsurance (UK) PLC v. Atl. Yacht & Marine Servs.*, 2008 U.S. Dist. LEXIS 108231, *6-7 (S.D. Fla. 2008) (citing *Pacific Insurance Co. v. Kent*, 120 F.Supp.2d 1205 (C.D. Cal. 2000)). In *Arbos*, the court found that the misrepresentations regarding lack of prior experience were material, noting that:

> Any reasonable juror would also find that a prospective insured's lack of any previous boating or boat-owning experience is material to the insurer's decision regarding whether to accept the risk and on what terms. *See Kilpatrick Marine Piling*, 795 F.2d at 942-43. A person with no boating experience is certainly more of an insurance risk than someone with significant boating experience; auto insurance companies charge new drivers higher premiums than more experienced drivers for this very reason. Applying the doctrine of *uberrimae fidei* to the undisputed facts of this case, the Court finds Defendants' material misrepresentations and/or non-disclosures of material facts void the Policy.

> 2008 U.S. Dist. LEXIS 109472 at *16-17.

17

Similarly, here, Defendants' misrepresentations concerned essential facts that were material to Plaintiff's decision to issue an insurance quote and a policy of marine insurance thereafter. The application forms used to procure insurance on the vessel specifically inquired as to Defendants' prior boating and ownership experience. The evidence offered in support of Plaintiff's Motion for Summary Judgment indicates that had the TLD underwriter known that Defendant Morales had never before owned a boat or vessel—and that he had absolutely no prior experience in operating any boat or vessel—TLD would have refused to issue any policy whatsoever. *See* **[ECF No. 58 ¶ 29]** (citing Usher Aff. ¶ 27).[9] As Defendants' misrepresentations involved criteria that Plaintiff used in order to determine whether to issue a marine insurance policy on the vessel, I find that they are material and Plaintiff is entitled to summary judgment on this issue.

## 3.    Exclusionary provision for theft

Interpretation of a marine policy is a question of law for the court. *Gulf Tampa Drydock Co. v. Great Atlantic Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985). A policy's language is ambiguous when its meaning is doubtful. *Hagen v. Aetna Casualty & Sur. Co.*, 675 So. 2d 963 (Fla. 5th DCA 1996). "Whether the terms of a policy are ambiguous depends not upon the meaning of such terms to one engaged in the insurance business or trained in law, but upon what the drafter of the policy might

---

[9] Similar evidence was determined to establish that a misrepresentation was material as a matter of law in *Giroire*, 27 F. Supp. 2d at 1313 ("To establish materiality, Lloyds provided the unrebutted affidavit of Mr. Burke A. Usher, an underwriter for Lloyds, in which Usher testifies that had Lloyds received a truthful 'yes' answer to the question whether the boat was used for racing, Lloyds would have declined coverage. In light of such uncontradicted evidence, the Court finds that the misrepresentation was material as a matter of law.")

reasonably anticipate would be the effect of the language used upon an untrained mind." *Giroire, supra*, 27 F. Supp. 2d at 1310 (citing John A. Appleman and Jean Appleman, *Insurance Law and Practice* section 7386).

In *Great Lakes Reinsurance (UK) PLC v. Vasquez*, 341 Fed. Appx. 515 (11th Cir. 2009), the Eleventh Circuit reviewed the same provision of an insurance policy that is at issue here. In *Vasquez*, like the instant case, Great Lakes issued a marine insurance policy on a vessel which was placed on a trailer and hitched to a truck. *Id.* at 516. One of the vessel's operators parked the truck with the vessel and trailer in a supermarket parking lot, during which the truck, attached trailer, and vessel were stolen. *Id.* Although the Eleventh Circuit reviewed the policy under New York law, it determined:

> Exclusion (k) excludes from coverage unambiguously a vessel "whilst on a trailer/boatlift/hoist/dry storage rack unless the scheduled vessel is situate in a locked and fenced enclosure."[FN*] Because the [vessel] was on a trailer and was not situate in a locked and fenced enclosure at the time of the theft, **the policy plainly excludes this loss from coverage**. Summary judgment in favor of Great Lakes was due to be granted.
>
> \* \* \*
>
> FN* Insured also suggests that exclusion (k)'s reference to a vessel "whilst on a trailer/boatlift/hoist/ dry storage rack" can be read to address only vessels situated on types of dry storage racks, and, according to Insured, the [vessel] was not on a dry storage rack at the time of the theft. We think this tortured construction fails to give full meaning to each of the terms of exclusion (k).

*Id.* at 518 (emphasis added). The Eleventh Circuit recognized that "this insurance contract—a non-standardized manuscript policy drafted in the United Kingdom—is not drafted in a style typically employed by United States-based insurers." *Id.* However, the fact that the contract was drafted outside the United States did not render the terms ambiguous. *Id.* (citing *Sirius Insurance Co. (UK) Ltd. v. Collins*, 16

F.3d 34, 38 (2d Cir. 1994) (although policy issued by UK-based insurer was "poorly drafted and contain[ed] odd provisions of questionable value," no ambiguity found that would require construing contract against insurer). In holding that section (k) unambiguously excluded such a loss from coverage under the circumstances in *Vasquez*, the Eleventh Circuit reversed the grant of summary judgment in favor of the insured, reversed the denial of summary judgment in favor of Great Lakes, and remanded the case for judgment to be entered in favor of Great Lakes. *Id.*

For similar reasons, I find that the exclusion contained in section (k) of the marine insurance policy is unambiguous and provides no coverage for the theft of the vessel. On October 30, 2008, the date of the alleged theft, the vessel was located in the driveway of Defendant Barreiro's home. **[ECF No. 62]** (Barreiro Depo. at 35:5-9). The vessel was on a trailer with a lock on it in the driveway. *Id.* at 35:12-14; 44:1-2. Defendant Barreiro's driveway has no fence or gate surrounding it. **[ECF No. 68-1]** (Morales Depo. at 37:9-11); **[ECF No. 62]** (Barreiro Depo. at 35:11-12; 45:12-19; 47:12-16). This is consistent with Defendant Morales' deposition testimony, in which he stated that Defendant Barreiro telephoned Defendant Morales and told him that the vessel was stolen while on a trailer parked at Defendant Barreiro's home in the driveway in the front of his house. **[ECF No. 68-1]** (Morales Depo. at 36:11-37:5). It is undisputed that the theft of the insured vessel occurred while it was situated on a trailer located in the driveway of Barreiro's home, which was unprotected by any locked or fenced enclosure. Accordingly, the situation here falls within the terms of the policy's exclusion contained within provision (k) and Plaintiff is entitled to summary judgment with respect to the exclusionary provision.

20

## B.    Plaintiff's Motion for Summary Judgment against KeyBank

In *Arbos*, *supra*, 2008 U.S. Dist. LEXIS 109472 at *22, Great Lakes also moved for summary judgment against KeyBank, arguing that KeyBank could not claim any rights of recovery under the policy superior to the individual defendant title holder.  Like the instant case, Key Bank did not file a response to Great Lakes' Motion for Summary Judgment in *Arbos*.  *Id.*  The court in *Arbos* determined that "[b]ecause Key Bank is listed as a simple 'loss payee' in the Policy, it has no right to recovery once the Policy has been voided because of material misrepresentations or failures to disclose by the insured.  As such, Plaintiff is entitled to summary judgment against all Defendants."  *Id.* (internal citations omitted; citing *AGF Marine Aviation & Transport v. Cassin*, 544 F.3d 255, 265-66 (3d Cir. 2008) and *Wometco Home Theatre, Inc. v. Lumbermens Mut. Cas. Co.*, 97 A.D.2d 715, 716, 468 N.Y.S.2d 625 (1983)).

The applications submitted for marine insurance coverage recognize KeyBank as a loss payee.  *See*, *e.g.*, **[ECF Nos. 58-3, p. 2; 58-4, p. 2; 58-5, p.3]**.  A loss payee who may not recover if the policy is void due to material misrepresentations.  KeyBank's status as a loss payee has never changed, nor has there been any request to change the status in order to provide additional coverage.  **[ECF No. 58 ¶ 23]**.  KeyBank does not oppose any of the material facts offered in support of Plaintiff's Motion for Summary Judgment.  Because Plaintiff is entitled to summary judgment against the individual Defendants and there are no disputed facts regarding KeyBank's status as a loss payee, Plaintiff is entitled to summary judgment against KeyBank.

## C.    KeyBank's Motion for Summary Judgment

### 1.    Breach of contract

Florida substantive law applies because the Court is sitting in diversity with respect to KeyBank's breach of contract claim. *See, e.g., Admiral Ins. Co. v. Feit Management Co.*, 321 F.3d 1326, 1328 (11th Cir. 2003) ("Sitting in diversity, we apply the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result."). Under Florida law, a breach of contract action requires three elements:  (1) a valid contract; (2) a material breach of that contract; and (3) damages. *See, e.g., Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir.1999); *Miller v. Nifakos*, 655 So.2d 192, 193 (Fla. 4th DCA 1995). Here, KeyBank has established each of these elements with respect to Defendant Morales.

There is no dispute that the Note is valid and that Defendant Morales signed the Note. On June 23, 2005, Defendant Morales signed the Note with KeyBank. **[ECF No. 68-1]** (Morales Depo. at 50:10-13; 51:7-12). Defendant Morales agreed that the Note identified him as the borrower and stated that the principal note amount is $61,955. *Id.* at 41:21-42:5. Defendant Morales acknowledged that he—and no one else—signed the Note. *Id.* at 42:6-8. Defendant Morales agreed that he alone was bound by the terms of the Note. *Id.* at 43:2-4; 44:9-11; 45:10-11.

Defendant Morales also expressed understanding that the insurance is unrelated to payments to KeyBank, and that the note is currently in default. **[ECF No. 68-1]** (Morales Depo. at 46:12-23).

Q:    You understand that you are still under an obligation to pay back the bank for any loan that you borrowed from the bank?
A:    Yes, sure enough.

Q:   Do you understand that if you haven't made any payments to the
     bank, that you are in default?
A:   **Yes, I'm in default.**
Q:   You understand you are stating that you're in default of the
     outstanding note?
A:   As a result of the problem that is going on.

**[ECF No. 68-1]** (Morales Depo. 46:24-47:9; emphasis added).  Finally, the issue

of damages is similarly uncontested.  Defendant Morales testified during deposition that

he had no reason to dispute the outstanding balance of the loan in the amount of

$56,258.60 since June 30, 2009.  *Id.* at 48:22-49:1.

### 2.   Defendant Morales' affirmative defenses

Although Defendant Morales did not respond to or oppose KeyBank's Motion for

Summary Judgment, I independently review the affirmative defenses and determine that

they do not provide a basis for denying summary judgment.[10]  Defendant Morales' First

Affirmative Defense is that KeyBank's cross-claim "cannot be decided upon until the

---

[10] Counsel for KeyBank attempted to question Defendant Morales regarding legal
issues, such as the affirmative defenses, during deposition.   I do not find this
persuasive. Counsel recognized that Defendant Morales proceeded *pro se* ("Q: Many
of these are legal issues, but the Court did allow you to proceed without an attorney"
(**[ECF No. 68-1]** Morales Depo. at 50:18-19); "Now I'm going to ask you another – very
quick legal questions, which I understand you are not a lawyer, but we'll try to get it as
simple as we can." (53:8-11)).  Counsel was also aware that neither Defendant had ever
his deposition taken before.  **[ECF No. 62]** (Barreiro Depo. at 5:20-22); **[ECF No. 68-1]**
(Morales Depo. at 5:17-19).

Furthermore, Defendant Morales' responses to counsel's questioning indicate that he
did not understand the legal aspects of questions ("A: I don't know what to say.  I don't
know.  I don't know.  I don't understand." (**[ECF No. 68-1]** Morales Depo. at 51:24-25);
"A: What do I know? I don't know what to say." (*Id.* at 54:25)).

Defendant Barreiro similarly indicated "I don't have an attorney or anyone to tell me.  I
don't know. [Counsel for Plaintiff:] That's right.  But you still have to tell us.  (**[ECF No.
62]** Barreiro Depo. at 48:1-4))   "Then I have no attorney and no one will tell me
anything" (*Id.* at 48:15-16). "I am asking because I don't know what to answer. I don't
know. He's an attorney, I'm not. He's an attorney, I'm not. I'm not giving a speech. All
I'm asking, I'm thinking what to do because I don't have any attorney." (*Id.* at 48:24-
49:4).

Court rules on the original Declaratory Action in this matter." *See* **[ECF No. 17, p. 2]**. KeyBank's claim for Breach of Note does not depend upon resolution of the declaratory action. Whether Plaintiff must provide coverage for the loss of the vessel due to the alleged theft is a separate issue from whether Defendant Morales breached the agreement by failing to make payments required under the Note. Therefore, the First Affirmative Defense is insufficient to overcome KeyBank's Breach of Note claim.

Defendant Morales' Second Affirmative Defense, that he "has complied with all or virtually all of his obligations under the Contract," **[ECF No. 17, p. 2]** is unsupported by the evidence. On numerous occasions throughout his deposition, Defendant Morales admits that the Note is in default, and that failure to make a payment to KeyBank demonstrates that Morales has not complied with his obligations under the Note. *See* **[ECF No. 62]** (Morales Depo. at 46:12-15, 53:25-54:3_.

Defendant Morales' Third Affirmative Defense is that the "note is void or voidable, as [KeyBank] has failed to properly identify the security interests both in its pleading and in the documentation attached to its pleading." **[ECF No. 17, p. 3]**. A review of the evidence indicates that both Key Bank's Cross-claim and the Note properly identify KeyBank's security interest, the UCC Financing Statement. *See* **[ECF No. 10, p. 13]**. KeyBank specifically identifies the security interests in the cross-complaint and attaches the UCC Financing Statement to the cross-complaint, confirming that KeyBank secured its security interest in the Note. *Id.* at Ex. B. The UCC Financing Statement also identifies the vessel as collateral. *Id.*

Defendant Morales' Fourth Affirmative Defense is that KeyBank does not state a claim for breach of note by failing to allege the following: 1) formation of the

24

contract/note; 2) KeyBank performed all of its obligations under the contract/note; 3) Defendant Morales breached the contract; and 4) KeyBank suffered damages as a result of Defendant Morales' breach. **[ECF No. 17, p. 3]**. Considering the pleadings, deposition testimony, affidavit of William Cloonan, and exhibits attached thereto, I find that KeyBank has adequately alleged the elements necessary to support its claim for Breach of Note. Accordingly, there are no disputed issues of material fact and my independent review of Defendant Morales' affirmative defenses reveals that they are insufficient to warrant denial of KeyBank's Motion for Summary Judgment. Therefore, KeyBank is entitled to summary judgment on Count I of the cross-claim.

## VI.    Conclusion

Based on the foregoing, it is hereby ORDERED and ADJUDGED that:

1.    Plaintiff Great Lakes Reinsurance (UK) PLC's Motion for Summary Judgment **[ECF No. 57]** is GRANTED.

2.    Cross-Plaintiff/Defendant KeyBank N.A.'s Motion for Summary Judgment **[ECF No. 66]** is GRANTED.

3.    This case is CLOSED.

4.    Pursuant to the Order Granting Third-Party Defendants' Motion to Dismiss **[ECF No. 31]**, Third-Party Plaintiffs Romilio Morales and Jorge Barreiro may file an Amended Complaint within 10 days of the denial of coverage, re-opening the case, or the complaint will be dismissed with prejudice.

DONE and ORDERED in Chambers at Miami, Florida this ___7___ day of December, 2010.

THE HONORABLE ALAN S. GOLD
UNITED STATED DISTRICT JUDGE

25

cc:    U.S. Magistrate Judge Chris M. McAliley
Counsel of record

Jorge Barreiro and Romilio Morales, *pro se*
2473 W. 80th Street
Hialeah, FL 33016
**[from Chambers via U.S. Mail]**